you all to our court this morning. Hopefully we will not be as foggy in here as we are out there. Three quick observations. First, Judge Newsom and I wanted to take a moment to introduce to you, you may not know, our visiting judge, David E. Bell. He's a circuit judge on the 10th Circuit of the United States Court of Appeals where he has served with really great distinction for many years. He was appointed to the 10th Circuit by President Reagan in 1988. He sat with us many times and we're delighted to have him help us with our work. So welcome again. Thank you, my pleasure. Second observation, you're probably familiar with our time clocks, but if you are not, you'll notice we have a green and amber and a red light. Green, of course, means you can go. Amber is a two-minute warning. Red means your time is up and we'd be much appreciative if you could bring your remarks to a conclusion. Doesn't mean you have to stop in the middle of a sentence, but if you could bring it to a conclusion, we'd be much appreciative. Third and last, as you assume that we've had a chance to review the briefs, record excerpts, and in many instances, we've had a chance to review the record as well. So feel free to go right to the heart of your argument as you proceed. With that, we will proceed with the first case, which is Joshua Moore v. GEICO General Insurance. Good morning. Good morning, Mr. Rosenblatt. Good morning, Your Honor. May it please the Court, Stephen Rosenthal on behalf of the appellant, Joshua Moore, along with Lisa Lauk, counsel table. Your Honor, this case presents a rather remarkable situation. A prior panel of this Court, at summary judgment, held that there was enough evidence that the plaintiff had presented at that juncture for a jury to determine that GEICO, the defendant, had acted in bad faith. Upon remand, trial counsel used this prior panel decision as a order that's on review here today, that the evidence was substantially the same as that presented at summary judgment. Limited evidence of a simultaneous settlement with another insurance company, Peak Insurance Company, came in to show two, at least two different things. One, that there was a nearly identical settlement agreement, or terms of settlement, that they were reasonable to be met by an insurance company under the same time frame and at the same, involving essentially the same circumstances. And second, and perhaps more importantly, to rebut the defendant's central defense in this case, that the plaintiff counsel, the claimant's counsel, was unwilling to settle, and therefore was almost a bad faith setup situation. Several months after the jury verdict in favor of the plaintiff finding GEICO in bad faith, the district judge, in cold reflection, reversed herself regarding the evidentiary admissions she had allowed and policed properly at trial, and said. Can I just, I guess, focus you, at least for my purposes, on what was sort of the key difficulty for your side, which are the standard reviews, right? I mean, first at the new trial phase, you know, we've got this sort of reverse presumption baked into the law, such that, you know, I think you said, if you can't say with fair assurance that the verdict was not swayed by the error, then it's impossible to conclude that substantial rights were not affected. And then, layered on top of that, you're, before us, on a ruling on a new trial motion, abuse of discretion, it's functional, it's basically a 403 determination. It seems like a lot of deference for you to overcome. Well, there's no question that it's an abuse of discretion standard. I would part company, perhaps, Judge Newsom, with the reverse presumption here. I think that the case law says that that presumption is born, rather say that the burden is born by the move-in. Here, it was GEICO moving for a new trial. They had the burden to show that it was not harmless error at that juncture. They did not meet that burden, nor did the district court's opinion satisfy that burden. There was, and that's, if you look at the Haygood case from this court, it's essentially applied that way, and more recent opinions that are not cited in the briefs also validate that it's the burden of the move-in, and that follows from Rule 61 as well. Tell me, I'm sorry, go ahead. Well, so let me just follow up very briefly. So I guess I'm looking at a case called Advantage Telephone that says, when a party seeks a new trial on the ground that the jury was influenced by erroneously admitted evidence, which is what we have here, the trial judge must grant a new trial unless the error did not affect substantial rights, and then we go on to say, the language that I quoted earlier, unless we can say, or if one cannot say with fair assurance that the verdict was not swayed, then it's impossible to conclude that substantial rights were not affected. And what's interesting, these are, the opinions are fairly difficult to decipher sometimes in terms of where the burden plays a role, and obviously, as you pointed out, there's a difference between a case where, let's say, on a motion to eliminate, a decision was made to exclude or include evidence, and then that's the issue up on appeal. Here we have the overlay of the new trial grant, so you have that discretionary wrapping around the package, but it doesn't, in my view, change the initial burden on the move-in to show that there was substantial prejudice by the introduction of the evidence. In any event, even if the court believes that that's the appropriate standard, we submit that we can satisfy it here, because you look at the factors, for example, from the... Let me pause a moment. Is that only, you're only accepting on the burden of showing prejudice rather than a burden of showing balance? No, I think both, Your Honor. Well... I do believe both. Right. And we've argued, obviously, in the papers that they didn't meet both, but I don't want to rest fully on a burden of proof thing. I want to say, I mean, our position is that under even the more difficult standard of abusive discretion, because I understand the institutional value of deferring to the trial judge, might have been a different call here had the judge made a ruling from the bench immediately after trial. This was upon cold reflection later on, so it's a little bit different, and it's not that different from this Court's review, frankly, of this record. But the Pete... You know, sometimes cold reflection is better than the heat of the moment. I will admit that isn't always true in the course of a trial, but sometimes a little distance helps you. No question. No question. Let me ask you the question this way, then. We all agree, basically, on the standard, and it's a substantial burden that you have to navigate. What if they're about Peek's handling of the claim that would tell the jury much about whether or not Guy co-acted in good faith? I think there is some overlap, but it struck me, candidly, that we weren't really comparing apples and apples. They really were not the same. There was enough that was disparate that might suggest that a trial judge could go either way on that call. And if, indeed, that's right, where's the abuse of discretion? Well, let me answer it this way. I disagree that they were substantially different, and that they're in line... Tell me why they were substantially the same. Okay. And an error of law is what's encapsulated in that. But let me, before I answer your question, just put to the side an opinion, the fact that there's also an opposite side of that coin that is the unwillingness to settle issue, which is the affirmative defense and defense theme. Yep. The similarity is that, under Florida law, both insurance companies bore the same incentive to settle. The potential exposure to bad faith liability was there for both of them. That's the Allstate v. Oser case and the Hillary decision that it endorses, which is from Judge Moody before he was a federal judge. Guy co-knew it had a much higher upside risk, didn't they? No, I don't think that that's... On a bad faith claim? Because they knew that the personal injuries were staggeringly, potentially higher than the property damage. Well, so the property damage liability that Peek had, coverage that it had, did not insulate it from bad faith. And the letter, if you look in the record from claimant's counsel Holden to Peek, said that the amount of the damage to the car and its contents exceeded the value of the $10,000 property damage policy. That's the only evidence we have in this record, I believe, of the amount. And as a result, from day one, both insurance companies were on notice this was a catastrophic accident, a death and a brain injury of a child. But Peek was never going to be held unless they assumed the defense of personal injury, which was the case in Oser. But assuming they didn't do that, they would never face liability beyond the property damage, which they knew was fairly Actually, Your Honor, I disagree with that reading of the Oser case. Yeah, I know you do. Your brief did, yeah. Okay. So our reading of that case, which is fairly explicit, I think, in the opinion, especially in the Hillary case that it adopts in a footnote, is that if the circumstances present an insurance company with a demand, an offer to settle for all potential damages, as happened here and as it happened in that case, Hillary, then the liability of the insurance company in the settlement doesn't get consummated in good faith is for the entirety of the damage. So you think that the claimant can convert a property insurance into a property plus P.I. insurance simply by offering to a property insurer that we're going to give you a broader release than you might otherwise want. We're going to release you not only from all property claims, but for all claims. I wouldn't say that simple thing. They can convert a property insurance into an all insurance. I wouldn't make it quite that simple, but the effect is the same. By offering to do it and then the insurance company acting in bad faith, having been found in bad faith, in that circumstance, Florida law says that as a matter of law, they're exposed to that additional liability for failing duly to protect the interest of their insurance. You're arguing that even if the property insurance company never does itself assume defense of a personal injury claim. Yes. I rest on the Oser case and the Hillary case. In our view, it can be fairly read for that. In fact, it's explicit in the opinion. It is the only Florida law on the subject. GEICO has never submitted additional authority. The difference is, factually, Oser was a case where the property insurer, in fact, undertook the defense of the personal injury claim as well. Isn't that true? Yes. Go ahead and proceed with your other argument. In their opinion, they say, or because the circumstances created a duty, a basically common law principle that the Florida... Well, I suppose you can pull somebody out of a surf to try to save them and once you are a volunteer, you can sometimes pick up duty to complete the rescue that you started. Your Honor, respectfully, I understand the criticism of that view of the law and I think it comes down to whether or not it is or is not Florida law. The district judge in this case has issues with bad faith claims in insurance. She's made that clear on the record. In this case, after the trial, by saying, I'm not a fan of these cases, and at summary judgment, which a prior panel of this court reversed a decision... Does that really help us in deciding whether she abused her discretion? No, it does not, Your Honor. With the limited time I have before I sit down, I'd like to just also explain that the fact that the peak evidence was not a substantially prejudicial factor in this trial. Let me just articulate a couple of things that I think, if there was error, it was harmless. First of all, the jury was never told whether evidence coming in, especially through an expert which could be potentially influential, or during closing argument by plaintiff's counsel, that peak represented the standard of good faith and any departure from peak's performance meant Geico was in bad faith. That was what the district judge was concerned with and she policed that line during trial and trial counsel was very careful about not going over that line. It was a cleanly tried case, policing the line that she had drawn in a motion to eliminate and in some eliminated rulings. Second of all, only three documents came in. Those are relevant and we haven't talked about the other side of the coin to show what was unquestionably the defense theme of the case, that plaintiff's counsel, Mr. Holden, and the claimants were unwilling to settle. That's an affirmative defense that was put in in the answer. It featured absolutely prominently throughout the trial and even if you discount the importance of this evidence of the other settlement to the plaintiff's affirmative case, which I think Judge Marcus is what you were primarily focused on, the other side of the coin was in this case and it loomed tremendous. So there was even a jury instruction on that defense. As a result, it was imperative for plaintiff's counsel to be able to defend against that allegation and the peak evidence was critical to that issue. In light of the fact that I'm into my rebuttal time, unless the court has questions now, I'll reserve the time. Thanks very much. Good morning, your honors. May it please the court. My name is Richard Young and I represent Geico General Insurance Company. Your honors, Geico asked this court to affirm the decision by the district judge, Judge Newsom, to affirm the judgment that was entered after the second trial in this case. The standard, as I believe Judge Newsom pointed out, is an abuse of discretion. It is an incredibly high standard for my opponent to meet to succeed on this appeal. He has to show that the district judge literally had no basis for granting a new trial and he cannot meet that standard. The grant of a new trial comes clothed with the presumption of correctness to this court. The district judge is obviously in the best position to weigh the evidence of what impact it had on the jury. You understand, of course, his consternation that, you know, this is now the second time that this district court judge has flipped herself in substantially identical circumstances in substantially similar cases. You know, this happened, the Mendez case, right? I mean, so we've sort of seen this play before. And you know, your honor, it was, you know, we really expected the motion to be granted the first time around based on the strength of the Mendez case, but it wasn't. But I believe, as Judge Marcus said, sometimes it is helpful to be able to look back in cold reflection and realize, you know, I made that same mistake twice now. Nevertheless, it's a big deal when you set aside a verdict. Sorry, your honor? It's a big deal when you set aside a verdict. But I think it's a big deal when you set aside a verdict. Let me ask you about that. Yes, sir. Would it not be fair to say that it was a discretionary call that could have gone either way? Yes, I think so, with one caveat. Having sat there and listened to the way that the plaintiffs presented the evidence, having seen the way that this was using a comparison to the jury, where basically they said over and over and over, well, Pete got it right. Pete did it right. Pete did this. Had Geico done what Pete did, we would have settled. Had Geico done what Pete did, we would have settled. Pete hired lawyers. Geico didn't. When looking at all of that, it is inescapable that that evidence had to have swayed the jury's decision. The second trial is the best evidence of that, frankly. Well, and yet you do agree that there would have been no reason to set this aside if the evidence was only, yes, that the plaintiffs could and did settle with Pete for property damages. I'm sorry, Your Honor. The evidence were limited, not to all the lawyers hired and all the investigations and all the promptness of filing stuff. If it wasn't what Pete did except that Pete settled the property claim for the damages, would you quarrel with that evidence coming into the record? I would. You would? I would, absolutely, Judge. We cited to four cases from the state of Florida. There were three federal, one state, all of which hold the same proposition. You cannot allow the claims handling by another insurance carrier to come into evidence to compare claims handling. The plaintiff has not cited a single case to the contrary because none exists, and that's because the standard by which we determine whether bad faith has occurred, according to Harvey v. Geico, a brand new Supreme Court case, Burgess v. Infinity from 2004, these cases say that the focus is on the conduct of the insurance company who is accused of bad faith. It is not on the focus of the claimant's attorney or the claimant, and not on the handling of a claim by another carrier. So all four of these cases, the Mendez case, the state of Levine, Johnson v. Geico, Hilson v. Geico, all of these say we are not going to allow you to introduce how another claim was handled to use that to suggest bad faith. Well, I think that's Judge Ebell's question, how. It seems to me there's a difference, at least a plausible difference, that has some basis in Florida law between the fact of the settlement, and even the amount of the settlement, and how the settlement was accomplished. And I think the thrust of Judge Ebell's question is, if this were merely fact and amount, is that the same thing as how? I think it's a problem, Judge, to let even that in, for this reason. In this particular case, the property damage claim was worth about $12,000. There was $20,000 in combined property damage coverage between Mr. Waters' coverage with Pete and Geico's $10,000 property damage claim. Now, the plaintiff has said this evidence was critical to show a willingness to settle. Well, what that asks this court to believe is that a plaintiff who settled a $12,000 property damage claim for more than it was worth, that that somehow is evidence that they were willing to settle a bodily injury claim worth $45 million for $20,000. It does no such thing. That's simply absurd to say that one supports the other. There's no way those two things correlate. But that's what they would have you believe. And that's why the evidence is not relevant, even to the point of just, well, they reached a settlement with Pete. What does that tend to prove or disprove in the case? Nothing. All it does is confuse the jury, inject irrelevant matters, and create prejudice against Geico, because it suggests, well, you settled with them. Well, yes, for completely different reasons and for a completely different claim. And, indeed, they settled with Geico for that property damage claim, too. But, in a way, it was kind of a misleading situation, because the judge basically ruled that that evidence of Geico could come in. So, I mean, the attorney is saying, gee, if we limit it just to that, if we put aside whether they went beyond what was really authorized, but just testified about whether there was a settlement, I mean, couldn't they say something about we've kind of been sucked into this? You told us on the motion in limine ruling that we could put on this evidence, and now you're reversing us because we did what you told us we could do. You mean, does it, is Your Honor suggesting perhaps it was unfair to the plaintiff's attorneys and the underlying case, the attorneys, Ms. Krupp? I don't know that I can speak to that, Judge. I don't think that it was something that was, let me put it this way, I don't believe the use of the evidence that she allowed in was proper. I believe it was highly prejudicial. And the reason that I believe that, and I think that the record bears me out on my belief strongly. But she said they could have used that. When she ruled on in limine, she said that. Now, is our review of abuse of discretion different if a lawyer puts on evidence that's wrong? We say, okay, and then the court says, because of that wrong evidence, I'm going to reverse the trial. Do we look at that differently depending on whether that evidence came in because it had been approved in advance by the court to come in? No, sir. Versus whether it just came in cold. So you're saying the ruling on in limine is not a relevant factor? No, no, sir, and it's not. And the reason for that is very straightforward. If you look at this case, Williams v. City of Faldosta, O'Rear v. Fruhoff that we cited for the standard of review, it specifically states that a court can grant a new trial based on legal error. And that can be the court's own error. And both of those cases say that the district judge should be granted the discretion to correct its own legal errors. Now, what Your Honor just described is a classic case of a district court making a legal error on a motion in limine that then resulted in an unfair trial and then correcting that error. And those cases come to this court cloaked with a higher standard of review for abuse of discretion, if you will, than one where it might be based on something else. So in this case, what Judge Bucklew did was correct an error she made at the motion in limine stage, and that's why I disagreed, Your Honor, and said I don't think it really matters because I think you're talking about a scenario where she's correcting her own error. And did it cause the opposing attorneys to go into all of this evidence? Well, it perhaps may have, and that may be why they went into it, but it didn't change the fact they shouldn't have. It was highly prejudicial, and Judge Bucklew was correct to remedy the error. Help me again with the standard. We all agree that we review the district court's ruling on a motion for a new trial for an abuse of discretion. We all know that that means if the court made a clear error of judgment or applied an incorrect legal standard, then we have an abuse. Our case law is clear. It's clear pretty much everywhere. Yes, sir. Let's dig down a little further into abuse. We've said, have we not, that we more closely scrutinize a court's grant of a new trial than a denial of one, and have accorded grants of such motions less deference than denials. That would be a fair statement as well, would it not? That is correct, Your Honor. Even though we characterize it as an abuse, it's abuse of an arguably different character or species than if we were looking at the denial, right? Yes, I agree, Judge. Judge, you suggest that Florida law categorically bars the admissibility of these comparative claims handling evidence. Isn't that an overstatement of Florida law? See, I looked at the Esteta-Levine case, which looked to me like the best explication and they certainly looked down on it and the dicta strongly points in that direction, but I don't read that case as holding under Florida law that comparative claims handling evidence never comes in. Have I misapprehended that case or Florida law more generally? Your Honor, anytime we use the word categorically, and we may have used that word ourselves, it's a little troublesome, isn't it, because it's so encompassing. But let me say it in this fashion. There's been no case cited to you, to this panel, where there was comparative claims handling allowed because we don't allow it in Florida. And these four cases that I've cited in our brief all stand for that proposition, that you can't do this, and there's a good reason for that. Florida law informs us as to whether an insurer's conduct is bad faith. There are at least a thousand or more insurers in the state of Florida, and there is no one claims manual guiding all of their ways of handling it. I accept all of that. My only point is that it would be erroneous to say, would it not, that Florida law bars comparative claims handling evidence from coming in, period. It might be sufficient to say it doesn't look very favorably upon that admissibility, but it does not categorically bar it. Would that be a fair statement of Florida law? It would be fair that there's no statute that says that, but there's no case that says you can do it. There's only cases that say you can't. Your point is that even if no statute or case has articulated the principle that it is the rule, it simply hasn't happened. That's correct, Your Honor. Because this will be helpful, I think, on rebuttal as well, and I think in your brief, and then here, this is basically sort of like the triple dog dare, right? I mean, you've triple dog dared Mr. Rosenthal to come forward with a case that allows this sort of evidence in. Yes, yes, and there are none that have been cited in the brief. Right, but the way I read your brief was to say something more than Judge Newsom said. I read your brief to say it's barred, period. There's a categorical absolute bar, and that seems to me to be wrong. It's one thing to say it ain't ever happened, and it's another thing to say Florida courts have prohibited it expressly. Judge, we will stand corrected on it ain't never happened because I couldn't agree with you more it hasn't, and one of the things my opponent says is that, well, it depends on the fact scenario. It's a factual driven thing. Well, in every case where the fact scenario was examined, they decided we're not going to allow this, and in every case that that's happened, the reasoning behind it has been because we look to Florida law. We don't look to how some other carrier might have done something, and that's the crux of the problem in this case and why it was so prejudicial is they simply took a property damage only insurer who had no bad faith exposure for this $45 million judgment and compared the fact that the plaintiff settled with them, and by the way, the plaintiff attorney was the one who made the decision that they got it right. Basically, what was allowed to happen was he became the arbiter of what is good faith in Florida by declaring Peek got it right. I heard that over and over. Peek did it right. Peek and its team of lawyers got it right. I gave the same demand to two insurance companies. One did it correctly. One did it wrong. So he became the standard, if you will, for Florida bad faith by using Peek as his example, compared the claims handling, and then it didn't matter what the law said anymore. The jury was completely confused, thinking that if we didn't do what Peek did, then we're in bad faith, and that's why it was highly prejudicial. That's why a new trial was warranted, and that's why, respectfully, Judge Buckley did not abuse her discretion in granting a new trial, and despite counsel's personal attacks on the judge, which certainly have no place in the decision-making today, there is nothing to suggest that the judge leaned this way or leaned that way. Her order was extremely thorough. She cited example after example after example of where the plaintiff improperly drew claims handling comparisons and then held them up to say, this is why a guy goes in bad faith. In Levine, which is really the only case you've got that's very relevant because one's a federal case, you cite four of them, one's a federal case, one is unpublished, one is a . . . I think two of them may be . . . and two of them are unpublished. So the only published Florida case, state case that you have is Levine, and in Levine, it was simply a question of whether the judge had properly balanced the probative versus prejudicial value, and the court said the judge properly balanced it. Well, we know we get balancing cases all the time, and people always cite precedent to us this way and that way. The balance came out this way on that case, so we win, and the other guy says the balance in another case came out the other way, we win. We all know that these balancing cases are not . . . it's hard to find precedent that really ties the hands of a judge in a balancing case because they vary so much. I agree, Your Honor, 100 percent, and that's the reason why, as Judge Marcus pointed out, perhaps saying bar and categorically was a little bit too zealous of advocacy, but in Florida, every time this has been determined or been considered, it has been determined not to be admissible, and we believe that that was a proper decision in this case, and certainly, if that's the situation, it is just not appropriate to say that Judge Bucklew abused her discretion. Thanks very much. Mr. Rosenthal, you reserve four minutes. Thank you, Judge Marcus. All right, and the triple dog dare has been issued. I heard that, so I suppose I should start there. Yeah, start there. Not being that familiar with what exactly a triple dog dare is, I think I get . . . Oh, come on. You've never seen a Christmas story? Stick your tongue to the light pole. Okay. Yes, yes, but that doesn't happen that often in Florida where you . . . It is true. There is no case that we have found, because we would have cited it prominently, that says affirmatively in the background of the absence of any authority on this, that this is expressly appropriate. However, as I think you pointed out, the absence does not create a rule to the opposite effect, and we submit that the law that does exist that we would rest under is an umbrella here of the admissibility, usually through expert testimony, of industry custom and practice in Florida insurance bad faith cases. Think about it. There are always experts that come in, and it's legion in the Florida case law and this court's case law. The Powell case is one cited in the brief from the Florida District Courts of Appeal, where experts can come in and say, I have a long career in the insurance industry. I've worked for insurance company A, B, C, and D. Here's how it's done. This is what is the custom and standard. I question this. What is the difference if the expert then says, here's a particular concrete example of another company, what it did met industry custom and practice? That's what Mr. No did in this case for the plaintiff. That law in Florida creates an umbrella under which individual testimony, where relevant and where not unduly prejudicial, policed by a district judge here appropriately, can come in to illustrate for the jury a concrete example when it occurs in a circumstance that is substantially similar. Putting aside the question about the legal difference about the exposure to bad faith to this other company, on the other side of the coin, where the affirmative defense in the case, and this is a tremendously important distinguishing factor from any other case that they've cited which has gone the other way on the facts. None of those cases have a situation where the opponent of this evidence is assailing the proponent of the evidence to say that they would not have settled the case, and where the evidence that the proponent wants in is the best evidence of proof that they could have settled the case in the affirmative defense, and that's what Mr. No has asked, which is, well, why isn't that just enough? Just put in the fact and the amount of the settlement. Shouldn't you be satisfied with that? I submit that that's not close to enough to rebut an affirmative defense. When the affirmative . . . It isn't an affirmative defense. They called it one. They pled it as one. But it really isn't. It is basically saying you haven't proven your case. Isn't that right? Well, I think Florida law is a little mushy on that. It really does merge together, and I agree, that could have settled in the affirmative case and that you weren't willing to. You had the burden to prove they could have settled. It was specifically your burden, so when they say you didn't prove that, they called it an affirmative defense, but it really is a denial of your part of your burden. The difference is that in the affirmative case, to show that you could have settled, you have to show, as the plaintiff in a bad faith case, that the claimant had put forward a reasonable claim that was clear, that was acceptable, that could be met within the timeframe offered. That goes to could have settled, and the Peek, because it was such a similar claim, proved that an insurance company could have settled the claim during that time, arguably. But more importantly, and different from that, is the argument, which is from the perspective, the defense, or argument in this case from the defense, was that the claimant's counsel and the claimant were not willing to settle. They were never going to do it, no matter what we did, no matter how well we treated the insured. They weren't going to do it because they had their reasons, and they made it very explicit in the transcript. It was to make money, and to try to get us to be the deep pocket. Aside from the fact that that's questionable under Florida law, when the defense does that... Go ahead, I'm sorry. I'm sorry. I mean, the key point is you can't tie the arm behind the back of the opposing party and not let them put in the terms of the settlement, the X, Y, Z of what happened, why Mr. Holden said, well, these were the particular provisions important to me, clear affidavits of no other insurance. A release that was limited just to those drivers, not to any agents, which potentially would implicate under Florida law, under the Pragany case, an insurance company itself. I see my time's expired, so let me wrap up by saying... May I? Sure. One quick question. Do you have any cases that suggest or deny whether we should review the abusive discretion of granting a new trial differently if the error that the lawyer made had been invited by the judge in the first place? I do not. I do think that the ruling shows that it was reasonable for that evidence to come in, and that the district judge believed so throughout the case. We've looked at this issue under abusive discretion somewhat differently if the rationale for the determination is that the evidence is insufficient, as opposed to the trial judge concluded that she made a mistake about an evidential call. Correct. And in the first instance, our scrutiny is of a different character, and perhaps more intense than in the second instance. We've said that repeatedly, have we not? That is correct. To the extent that there is a citation to that case which involves that in our brief, that's not as applicable. You're correct. We are under the more deferential standard of those two. Even though it was a jury verdict that was vacated, it was vacated not because the jury's finding was wrong because the evidence was insufficient, but rather because the judge said, I screwed up. I made a mistake about the evidence. If I can answer the question by making one more affirmative plug, recognizing the time, I would say that is true, but when the court looks at the range of evidence that came in that goes beyond the fact of the settlement with Peek, and what we submit is essential to put in evidence to rebut the defense theme of the case regarding what plaintiff's or claimant's counsel was thinking, there are virtually, I think, four mentions of Peek's umbrella of what is appropriate industry custom and practice. For those reasons, we think that there is a sufficiently unique set of factors in this case for the court to reverse and reinstate the jury's verdict. Thanks very much. Thank you both for your efforts, and we'll proceed with the next case, which is Raymond Gillen versus the United States Attorney General.